SARAH JACKSON, Plaintiff,
v.
D.A. DANIELS, in his individual capacity, Defendant.
No. COA08-822.
Court of Appeals of North Carolina.
Filed April 21, 2009.
This case not for publication.
Mario M. White for Plaintiff.
Sumrell, Sugg, Carmichael, Hicks & Hart, P.A., by Scott C. Hart, for Defendant.
STEPHENS, Judge.
Plaintiff Sarah Jackson instituted this action by filing a Complaint in Craven County Superior Court on 30 January 2007 against Defendant, Detective D.A. Daniels of the New Bern Police Department, in his individual capacity. Plaintiff alleged that Defendant had made false statements in an application for a search warrant and that he had committed assault and battery, trespass, and false imprisonment against Plaintiff. Plaintiff also alleged that the search of Plaintiff's home and the detention of Plaintiff during the search were illegal.
Defendant timely filed an Answer and Defenses. On 31 October 2007, Defendant filed a Motion for Summary Judgment. The motionwas heard by Judge Lanier at the 18 February 2008 term of Pamlico County Superior Court. By order filed 7 March 2008 in Craven County, Judge Lanier entered summary judgment for Defendant. From the Order granting Defendant's Motion for Summary Judgment, Plaintiff appeals.

I. Facts
This case arises out of a search of Plaintiff's house conducted in the early morning hours of 2 August 2005. On 2 August 2005, Defendant received information from a confidential informant ("CI") that Herman King, Plaintiff's uncle, had cocaine in his possession. The CI advised Defendant that the CI and Herman King had been at 2906 Magnolia Drive in New Bern, North Carolina, manufacturing crack cocaine earlier that evening. The CI further advised Defendant that the CI and Herman King had manufactured an additional batch of cocaine at 1701 Pembroke Avenue in New Bern later in the evening. The CI had previously provided law enforcement with information that had led to multiple arrests and the recovery of substantial quantities of controlled substances, weapons, and money.
Defendant subsequently conducted an investigation on the two identified residences and on Herman King. Defendant's search of the utility records for the residences revealed Plaintiff's name on a utilities bill for 2906 Magnolia Drive. A background check of Herman King revealed a violent criminal history dating back an extended period of time, including convictions for drug trafficking and weapons charges. New Bern police officers also conductedsurveillance of the two identified residences to verify that the location and description of the residences provided by the CI were accurate.
Based on the information provided by the CI and Defendant's investigation, at approximately three o'clock in the morning of 2 August 2005, Defendant applied for search warrants for the two residences. In the applications, Defendant stated that there was probable cause to believe that "[c]ontrolled substances, packaging materials, scales, monies, weapons and documents establishing residency" constituting evidence of the crime of possession of controlled substances would be located on the premises of 2906 Magnolia Drive, the persons of Herman King and Sarah King Jackson, and vehicles located on the property, and on the premises of 1701 Pembroke Avenue, the persons of Herman King, Troy Mclean, and Felicia Pigford, and vehicles located on that property. Finding probable cause to believe that the commission of a crime was occurring at the locations indicated on the applications, Magistrate J.C. Woolard issued search warrants for both residences.
Shortly thereafter, Defendant, along with the New Bern Police Department's Special Response Team and Narcotics Unit, conducted a search of 2906 Magnolia Drive, Plaintiff's residence, pursuant to the warrant. The Special Response Team entered Plaintiff's residence first to secure the residence and its occupants. Defendant and the Narcotics Unit followed. According to Plaintiff, officers entered the residence, identified themselves, and requested that she lie on the floor. Officers then instructed herto place her hands behind her back, assisted her in rising from the floor, and placed her in black plastic handcuffs. Plaintiff testified that she did not know which officer placed the handcuffs on her and Defendant testified that Plaintiff was already in handcuffs when Defendant entered the residence. After being handcuffed, Plaintiff was escorted to the living room couch.
Defendant read Plaintiff the search warrant and requested Plaintiff's keys in order to search her vehicle and the shed located in the yard. Police officers did not find any of the items identified in the search warrant during their search of Plaintiff's residence.
After concluding the search of Plaintiff's residence, Defendant and the remaining officers left the premises to execute the search warrant on the second residence.

II. Discussion
By Plaintiff's sole assignment of error, Plaintiff contends the trial court erred in granting Defendant's Motion for Summary Judgment because genuine issues of material fact remain as to Defendant's liability for trespass, false imprisonment, and assault and battery.
Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). The moving party bears the burden of showing that notriable issue of fact exists.Pembee Mfg. Corp. v. Cape Fear Constr. Co., 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). Appellate review of a trial court's grant of summary judgment is de novo. Builders Mut. Ins. Co. v. North Main Constr., Ltd., 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006).

A. Search Warrant
Plaintiff first argues that the search warrant for Plaintiff's residence was invalid because Defendant knew or should have known that the information Defendant provided to the magistrate to obtain the search warrant was false and that Defendant did not have probable cause to obtain a search warrant or to search Plaintiff's house.
Applications for search warrants must contain statements of fact "supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched[.]" N.C. Gen. Stat. § 15A-244(3) (2007). The affidavit is sufficient if it supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause nor import absolute certainty. The facts set forth in an affidavit for a search warrant must be such that a reasonably discreet and prudent person would rely upon them before they will be held to provide probable cause justifying the issuance of a search warrant. State v. Arrington, 311 N.C. 633, 636, 319 S.E.2d 254, 256 (1984) (internal citations omitted).
"[W]hether probable cause has been established is based on factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." State v. Sinapi, 359 N.C. 394, 399, 610 S.E.2d 362, 365 (2005) (quotation marks and citations omitted). The affidavit and warrant are reviewed not under a microscope, but under the totality of the circumstances. Arrington, 311 N.C. at 638, 641, 319 S.E.2d at 257, 259. Under the totality of the circumstances test, a reviewing court must determine "whether the evidence as a whole provides a substantial basis for concluding that probable cause exists." State v. Beam, 325 N.C. 217, 221, 381 S.E.2d 327, 329 (1989).
When an affiant relies on informant hearsay to establish probable cause, the veracity and basis of knowledge of the person supplying the information are relevant considerations. Arrington, 311 N.C. at 638, 319 S.E.2d at 257. The fact that statements from an informant have previously led to arrests is sufficient to show the reliability of the informant. Id. at 642, 319 S.E.2d at 260. Furthermore, an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." State v. Barnhardt, 92 N.C. App. 94, 97, 373 S.E.2d 461, 463 (1988) (quotation marks and citation omitted). Additionally, "[t]he experience and expertise of the affiant officer may be taken into account in the probable causedetermination . . . ." Id. at 97, 373 S.E.2d at 462. "[G]reat deference should be paid [to] a magistrate's determination of probable cause and . . . after-the-fact scrutiny should not take the form of a de novo review." Arrington, 311 N.C. at 638, 319 S.E.2d at 258.
In his affidavit here, Defendant stated that he had more than six years of law enforcement experience, possessed an Advanced Law Enforcement Certification from the North Carolina Training and Standards Commission, and held a Bachelors Degree in Criminal Justice Administration. Defendant further stated:
On 08/02/2005, I was contacted by a Confidential and reliable Source, hereinafter referred to as CI[,] in reference to a sum of controlled substances being located in a residence. The CI has given information in the past that has led to multiple arrests and the recovery of large quantities of controlled substances, weapons and money. Based on my experience in dealing with the CI, I have found that the CI is credible and accurate with information provided. On this occasion, the CI informed me that the CI had knowledge of a substantial quantity of cocaine being in the residence located at 2906 Magnolia Dr[.,] New Bern, NC[,] 28560 and in the possession of Herman King. A check of the criminal history of King indicates that King has multiple arrest[s] for drug violations, including Trafficking Cocaine.
Based on the information provided by the CI and the criminal history of King, I feel that controlled substances, packaging materials, money, documents establishing residency and weapons would probably be located during a search of the residence.
Based upon Defendant's personal experience with the CI's credible and accurate information which had led to prior arrests, the CI's indication from his personal knowledge that a substantialamount of cocaine was located specifically at 2906 Magnolia Drive, Herman King's related criminal history, including multiple prior arrests for drug trafficking, and Defendant's experience and training in law enforcement, we hold that the evidence as a whole provided a substantial basis for concluding that probable cause existed to believe that the items listed on the affidavit were in the house, car, or on the person of Plaintiff.
Nonetheless, Plaintiff argues further that Defendant's statements in the affidavit were false because Defendant "alleged that controlled substances, packaging materials, scales, monies and weapons were located on [Plaintiff] and in her residence" but the CI never told Defendant specifically that any of those items were located at Plaintiff's house. However, Defendant need not have established with absolute certainty that such items were in fact on the premises; Defendant need only have shown probable cause that the items listed would be discovered on Plaintiff's property. Arrington, 311 N.C. at 636, 319 S.E.2d at 256. Based on the totality of the circumstances, including Defendant's averment in his affidavit that the CI "had knowledge of a substantial quantity of cocaine being in the residence located at 2906 Magnolia Dr[.,]" we conclude Defendant had probable cause to obtain a search warrant and to search Plaintiff's house.
Plaintiff further alleges that the application for the search warrant was not sufficiently specific and detailed to allow the magistrate to make a determination of probable cause. Once again, we disagree. This Court has held that probable cause cannot be shown by conclusory affidavits stating only the belief of the affiant or an informer that probable cause exists to issue the warrant. Recital of some of the circumstances underlying this belief is essential. When hearsay information is a part of the foundation of the affiant's belief, such information must be sufficiently detailed in order to form a substantial basis for the magistrate's finding of probable cause. Furthermore, the affidavit must implicate the premises to be searched. State v. Hyleman, 324 N.C. 506, 509, 379 S.E.2d 830, 832 (1989) (internal citations omitted).
In Hyleman, the affidavit supporting the police officer's application for a search warrant stated in part:
THAT FROM THE MOVEMENT OF THE SUSPECTS DURING, AND BEFORE THE PURCHASE [OF COCAINE BY THE OFFICER], AND INFORMATION RECEIVED DURING THE PURCHASE, AND INFORMATION FROM TWO CONFIDENTIAL SOURCES OF INFORMATION AFTER THE PURCHASE THAT THE APPLICANT HAS REASON TO BELIEVE THAT THE U.S. CURRENCY [USED] . . . TO PURCHASE THE TWO OUNCES OF COCAINE, AND OTHER CONTROLLED SUBSTANCES ARE AT THIS TIME LOCATED IN THE ABOVE DESCRIBED LOCATION AND REQUEST RESPECTFULLY THAT A SEARCH WARRANT BE ISSUED.
Id. The North Carolina Supreme Court concluded that the application for the search warrant was inadequate to establish probable cause as the affidavit failed to state what information the affiant had received from the confidential informants and failed to disclose any facts that would lead a magistrate to reasonably believe that the identified currency and contraband were at the defendant's residence. Id. at 509-10, 379 S.E.2d at 832-33.
Unlike in Hyleman, the affidavit in this case specifically stated that the CI was "a Confidential and reliable Source . . . who has provided information in the past that has led to multiple arrest[s] and the recovery of substantial quantities of controlled substances, weapons and money." The CI provided the applicant information based on the CI's personal knowledge that "a substantial quantity of cocaine [was] in the residence located at 2906 Magnolia [Drive.]" Furthermore, the affidavit disclosed that Herman King has multiple prior arrests for drug violations, including trafficking cocaine.
Plaintiff argues that "[i]f [D]efendant had in his possession information that crack had been recently cooked at [P]laintiff's house (as Defendant testified to in his deposition), he would have included that information in the warrant." However, while recital of some of the circumstances underlying the affiant's belief that probable cause exists is essential to allow a magistrate to determine probable cause, id. at 509, 379 S.E.2d at 832, an affiant need not include an exhaustive recital of such circumstances. Thus, unlike in Hyleman, and contrary to Plaintiff's assertion, the affidavit in this case was sufficiently specific and detailed to allow the magistrate to make a determination of probable cause . Plaintiff's argument is without merit and is overruled.

B. Trespass
Next, Plaintiff contends Defendant was not entitled to summary judgment on the trespass claim. She bases this contention solely on her argument that Defendant did not have a valid search warrant.
"The civil action of trespass to land protects the possessory interest in land from unpermitted physical entry." Majebe v. NorthCarolina Bd. of Medical Examiners, 106 N.C. App. 253, 261, 416 S.E.2d 404, 408 (1992). In this case, we have concluded that Defendant conducted the search of Plaintiff's premises pursuant to a valid search warrant. Accordingly, Defendant's entry was permitted. See id. at 262, 416 S.E.2d at 408. Moreover, Defendant's failure to execute the warrant would have constituted a dereliction of duty. See id. It follows that the trial court properly granted Defendant's Motion for Summary Judgment as to Plaintiff's trespass claim.

C. Assault, Battery, and False Imprisonment
Plaintiff also contends that Defendant committed assault and battery against her by "placing . . . handcuffs on her person" and that Defendant's illegal detention of her against her will constitutes "false imprisonment." We disagree.
An officer executing a warrant directing a search of premises not generally open to the public or of a vehicle other than a common carrier may detain any person present for such time as is reasonably necessary to execute the warrant. N.C. Gen. Stat. § 15A-256 (2007). "In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." L.A. Cty. v. Rettele, 550 U.S. 609, 614, 167 L. Ed. 2d 974, 979 (2007). "Such detentions are appropriate . . . because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial." Muehler v. Mena, 544 U.S. 93, 98, 161 L. Ed. 2d 299, 306 (2005). The detention of an occupant is less intrusive than the search itself, and thepresence of a warrant ensures that a neutral magistrate has determined that probable cause exists to search the home. Id. In contrast to this incremental intrusion, law enforcement has substantial justification for detaining an occupant:
"preventing flight in the event that incriminating evidence is found"; [sic] "minimizing the risk of harm to the officers"; [sic] and facilitating "the orderly completion of the search," as detainees' "self-interest may induce them to open locked doors or locked containers to avoid the use of force."
Id. at 96, 161 L. Ed. 2d at 306-07 (quoting Michigan v. Summers, 452 U.S. 692, 702-03, 69 L. Ed. 2d 340, 349-50 (1981)).
"[T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence[,]" Summers, 452 U.S. at 702, 69 L. Ed. 2d at 349-50, thus justifying the use of handcuffs during a detention. Furthermore, the "safety risk inherent in executing a search warrant for weapons [is] sufficient to justify the use of handcuffs[.]" Muehler, 544 U.S. at 100, 161 L. Ed. 2d at 308.
In this case, the officers executing the search warrant, including Defendant, had the right to detain Plaintiff while the residence was being searched pursuant to the valid search warrant. N.C. Gen. Stat. § 15A-256. The governmental interests in not only detaining the suspect, but using handcuffs, were substantial where the warrant authorized a search for weapons and controlled substances and one of the suspects was known to have a violent criminal history, including convictions for weapons charges. SeeMuehler, 544 U.S. at 100, 161 L. Ed. 2d at 308. The actions of the police officers in the context of this lawful search were permissible, and perhaps necessary, to protect the safety of the officers. The officers needed to secure the premises and ensure that other persons were not close by or did not present a danger. The officers did not exert excessive force in executing the detention, requesting that Plaintiff lie on the floor and assisting her in rising from the floor to place her in plastic handcuffs. It is irrelevant to the determination of Plaintiff's assault and battery claims whether Defendant personally placed handcuffs on Plaintiff as all of the officers executing the search warrant were permitted to do so. While the officers were not at liberty to detain Plaintiff for a prolonged period of time, there is no evidence that the detention was prolonged as the officers left the premises immediately upon concluding the search.
As Defendant was authorized to detain Plaintiff for such time as was reasonably necessary to execute the search warrant, and as the detention of Plaintiff was executed in a reasonable manner, Plaintiff's contentions that Defendant's actions constituted assault, battery, and false imprisonment are without merit and are overruled.

D. Public Official Immunity
Plaintiff has brought these assault, battery, false imprisonment, and trespass claims against Defendant in his individual capacity, and Plaintiff contends the claims are not barred by public official immunity. Again we disagree andconclude, for the reasons which follow, that Defendant's entitlement to governmental immunity provides alternate support for the trial court's entry of summary judgment.
A police officer is a public official with qualified governmental immunity. Shuping v. Barber, 89 N.C. App. 242, 248, 365 S.E.2d 712, 716 (1988). "[A] public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." Smith v. Hefner, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952). Thus, an official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties. Meyer v. Walls, 347 N.C. 97, 112, 489 S.E.2d 880, 889 (1997). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." In Re Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984).
In this case, Defendant's actions in applying for and executing the search warrant were well within the scope of his employment as a police officer. Furthermore, while Plaintiff alleges that Defendant made false statements "with malice and reckless indifference" in applying for the search warrant, Defendant's statements were neither false nor malicious but were statements asserting probable cause based on the CI's information from his personal knowledge and Defendant's own investigation. Additionally, although Plaintiff alleges Defendant acted "maliciously" in executing the search warrant, Defendant was authorized to detain Plaintiff for such time as was reasonably necessary to execute the valid search warrant, the detention of Plaintiff was executed in a reasonable manner, and Defendant's entry onto Plaintiff's property was a permitted entry pursuant to the valid search warrant. As Plaintiff has failed to offer any evidence that Defendant's actions were beyond the scope of his duties as a police officer or were malicious or corrupt, Defendant is entitled to governmental immunity against Plaintiff's claims.
For the reasons stated above, the trial court did not err in granting Defendant's motion for summary judgment and Plaintiff's sole assignment of error is overruled.
AFFIRMED.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).